Patrick W. HALLORAN, III, Plaintiff–
Counter Defendant/Appellee,

v.

Martyne Anderson KOSTKA, Defendant–
Counter Plaintiff/Appellant.

Court of Appeals of Tennessee,
Western Section, at Jackson.

Aug. 18, 1988.

Application to Appeal Denied by
Supreme Court Oct. 31, 1988.

G. Patrick Arnoult, Roberta B. Matthews, Watson, Arnoult & Quinn, Memphis, for defendant-counter plaintiff/appellant.

Stevan L. Black, Hanover, Walsh, Jalenak & Blair, Memphis, for plaintiff-counter defendant/appellee.

FARMER, Judge.

This action involves a dispute between divorced parents over their child's surname.

Patrick Halloran (Father) and Martyne Halloran Kostka (Mother) were divorced on March 30, 1983. Mother was granted custody of the couple's only child, Kathleen, who was born October 16, 1981.

On July 22, 1983 Mother married Russell Kostka (Stepfather). Since Kathleen was so young at the time of this marriage, she began calling her new Stepfather "Daddy." Mother asked Father to consider permitting Stepfather to adopt Kathleen. When Father refused, Mother unilaterally decided that Kathleen should use Kostka as her surname.

When Father learned of this decision, he objected through his attorney. Mother responded that she intended to seek legal recourse in order to change Kathleen's surname to Kostka. However, no further legal action was taken by either party at that time. Although Mother registered Kathleen in preschool and kindergarten programs under the name of Halloran, she asked that Kathleen be called Kostka.

Finally, in order to prevent this de facto name change, Father took the legal action of filing a petition to permanently enjoin Mother and Stepfather from using the surname Kostka in identifying Kathleen. Mother filed a counter-petition asking that Kathleen's name be legally changed to Kostka.

At the conclusion of the evidence the trial court found:

> [t]hat it is in the best interest of the child that the petitioner's Petition for Injunction be granted, and that the respondents, and each of them, should be permanently enjoined from identifying, for any purpose whatsoever, the minor child with the surname "Kostka," and that a permanent mandatory injunction should issue requiring the respondents, and each of them, to identify the said minor by the surname of "Halloran"; for all purposes when the use of a surname is appropriate.

He accordingly dismissed the counter-petition.

Mother and Stepfather appeal from this decision and raise two issues for our review: (1) Did the trial court correctly apply the best interest of the child test in determining that Kathleen's name should remain Halloran; and (2) Did the trial court's decision violate mother's equal parental rights as guaranteed her by the Fourteenth Amendment to the United States Constitution? The scope of our review is *de novo* on the record with the presumption of correctness of the trial court's findings of fact unless the evidence preponderates otherwise. T.R.A.P. 13(d).

Mother asserts that the trial court should have applied the best interest of the child test with the burden on the Father to show injury to Kathleen in her use of the Stepfather's surname. Instead, she argues, the trial court based its decision on the presumption that the Father's surname should be used "in the absence of some compelling reason to do otherwise."

Mother states that Kathleen has been called Kostka for the past four and one-half years, during which time she has developed into a secure, affectionate, out-going child. She knows who her biological father is and has a good relationship with him. However, Mother argues that to force her "to use her Father's surname would cause Kathleen irreparable harm and stress by changing the status quo and the very secure and happy life Kathleen now has." She insists that to require Kathleen to use a name other than that of her mother and two adopted sisters would be damaging and stressful. To further support her position, Mother offered the testimony of a child psychologist, who stated that there was the possibility of embarrassment or anxiety to Kathleen if she

were forced to use a name different from the one to which she has become accustomed and one which is different from her mother and adopted sisters. In his written opinion, he stated that Kathleen should be allowed to use the surname Kostka on an "informal basis." Finally, Mother asserts that it is Kathleen's desire to have the same surname as her mother.°

In response to Mother's arguments, Father states that he lives in the same community as Kathleen. He is active in that community and enjoys an excellent reputation there. He has faithfully abided by the court-ordered support for Kathleen and maintained contact and visitation with her.

Father also points out that the interviews of Kathleen by the child psychologist were done in the presence of Mother, and her responses could have been influenced by this presence. Neither Father nor Stepfather were interviewed, and the opinion given by the psychologist was not based on any medical research, studies or treatises. In addition, the psychologist was not told that the Kostka marriage is the third for each party. At trial, when asked about the effects of a divorce between Mother and Stepfather on Kathleen, the psychologist testified:

> Q   What negative impact, doctor, if any at all could the divorce of Martyne and Russell Kostka have on Kathleen if she changes her name to "Kostka?"
>
> A   I would say that it would conceivably complicate her life somewhat more than if she maintained the first name. The divorce in any way would be very difficult for her to tolerate.

■■ We agree that in making a decision such as this that will impact on a child's life, paramount consideration must be given to what is in the best interest of the child, and the rights of the parents must yield to that concern. *Riddick v. Riddick,* 497 S.W.2d 740 (Tenn.App.1973); *Bevins v. Bevins,* 53 Tenn.App. 403, 383 S.W.2d 780, 783 (1964). However, in this instance we must place the burden of proof on the Mother to show that the use of Father's surname would not be in Kathleen's best interest. Based on our review

of this record, we find that she failed to carry this burden.

It is generally recognized that the father, who is ordinarily the objecting party, has a protectible interest in having his child bear the parental surname in accordance with the usual custom, even though the Mother may have been awarded custody of the child. For that reason, a change of name merely to save the mother and child from minor inconvenience or embarrassment will not be authorized against the father's objection. Where, however, the child's substantial interests require a change of name, as where the father's misconduct has been such as to justify a forfeiture of his right, or where his name is positively deleterious to the child, the change may be permitted.

57 Am.Jur.2d, *Name,* § 14. In this case we do not find any misconduct of the Father nor any evidence that there would be a deleterious effect on the child from using his surname.

Father is a prominent and well-respected man in the community in which he and his child reside. He has maintained contact with and supported Kathleen throughout her life. When he first discovered Mother's use of Kostka as Kathleen's surname, he promptly objected through his attorney. Although Kathleen may have expressed a desire to be called by the same surname as her Mother, at six years old Kathleen's desires, which are subject to being influenced by her custodians, are not determinative of this issue. *Hall v. Honeycutt,* 489 S.W.2d 37, 40 (Tenn.App.1972). We note here that although Mother is called Kostka socially, she is known professionally by her maiden surname of Anderson.

The Chancellor's order recites that he found the retention of the Father's surname to be in the child's best interest and this Court is inclined to agree. The evidence does not preponderate against this finding.

In her second issue, Mother asserts that she has been denied her equal parental rights as guaranteed by the Fourteenth Amendment to the United States Constitution. This she contends results because

the trial court has perpetuated an outdated custom of using the paternal surname. She relies on two cases in particular to support her contention that the custodial parent should be allowed to make the important decisions in her child's life, which also includes the selection of a surname.

In the first case, *In re Marriage of Schiffman*, 28 Cal.3d 640, 169 Cal.Rptr. 918, 620 P.2d 579 (Cal.1980), mother and father were married, but separated when mother was four months pregnant. When the baby was born the mother gave the child her maiden surname, a name which mother continued to use. The trial court ordered the surname of the child to be changed to the father's surname. On appeal it was held that the trial court must weigh all the factors in a particular case to determine the surname a child should be given. It therefore reversed the finding of the trial court and remanded the case for a determination of what would be in the best interest of the child.

Mother further relies upon *Rio v. Rio*, 132 Misc.2d 316, 504 N.Y.S.2d 959 (1986), wherein the parents likewise were separated at the time of birth. Mother gave the child a hyphenated version of her maiden surname and father's surname. When father objected, the appeals court upheld this name stating that parents have equal parental rights. However, it noted that its decision might have been different had she used only her maiden surname.

Both of these cases are in accord with Tennessee law. As stated previously, we use the best interest of the child test for decisions that impact on a child's well being, and Tennessee has recognized equal parental rights in its enactment of T.C.A. § 68-3-305. This statute makes provision for parents, who so desire, to give their child a surname other than that of the father. Upon agreement of mother and father, the child may be given the mother's maiden surname or a hyphenated version of father's and mother's maiden surnames.

■ In the case before us, Father and Mother were married and living together when their child was born and the name Kathleen Halloran was chosen for her. As a result, we find that Mother had already exercised her equal parental rights by her participation in choosing this name. Refusing now to allow her to change Kathleen's surname to Kostka does not deprive her of any parental right that is constitutionally or statutorily guaranteed her.

We affirm the judgment of the trial court. Costs of the appeal are taxed against the Mother for which execution may issue if necessary.

CRAWFORD and HIGHERS, JJ., concur.