IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 22, 2012 Session

# IN RE MONTANA R. T.

**Appeal from the Circuit Court of Cocke County**
**No. 31179 and 31575    Richard R. Vance, Judge**

**No. E2011-00755-COA-R3-PT-FILED-JUNE 29, 2012**

This parental termination case concerns the child's surname. The appellant biological father consented to the termination of his parental rights so that the child could be adopted by the appellee adoptive parents. At the conclusion of the telephonic hearing in which the biological father confirmed that he consented to the termination of his parental rights, the adoptive parents requested that the child's surname be changed. This request was granted. The biological father now appeals the trial court's decision on the child's surname. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Christopher D. Brown,[1] Dandridge, Tennessee for Respondent/Appellant, J.M.T.

Nicholas D. Bunstine, Knoxville, Tennessee for Petitioner/Appellees, D.F. and T.F.

Kathleen A. Mulvey, Del Rio, Tennessee as Guardian Ad Litem

---

[1]After oral argument in this appeal, Mr. Brown filed a motion to withdraw as counsel for J.M.T. The trial court granted the motion and appointed substitute counsel.

## OPINION

### FACTS AND PROCEEDINGS BELOW

The child at issue, Montana R. T., was born to biological parents Respondent/Appellant J. M. T. ("Biological Father") and C. L. T. ("Biological Mother") on April 28, 2000.[2] At the time of the proceedings below, Biological Father was incarcerated in federal prison, serving a twenty-seven year sentence. Petitioner/Appellees D. F. ("Adoptive Father") and T. F. ("Adoptive Mother"), (collectively "Adoptive Parents") are the child's maternal great aunt and uncle.

In September 2007, when the child was seven years old, the Cocke County Juvenile Court granted emergency custody of the child to Adoptive Parents. Approximately two weeks later, the same court granted Adoptive Parents temporary custody of the child. She has resided with Adoptive Parents since that time.

On April 3, 2009, Adoptive Parents filed a petition for termination of the parental rights of both biological parents and for adoption in the Circuit Court of Cocke County. At that time, both of the child's biological parents were incarcerated. The Adoptive Parents' petition was opposed by both Biological Father and by Biological Father's mother, the child's biological paternal grandmother, F.T. ("Biological Grandmother"). Counsel was appointed to represent Biological Father. The trial court also appointed attorney Kathleen Mulvey as guardian ad litem ("GAL") for the child.[3] In September 2009, Biological Grandmother filed a petition seeking to intervene.

Eventually, an agreement was reached. Under the agreement, both biological parents consented to the termination of their parental rights and adoption of the child by Adoptive Parents, so long as Biological Grandmother was permitted visitation with the child. Biological Grandmother agreed not to permit the child to visit with Biological Father while he was incarcerated.

On November 2, 2010, the trial court held a hearing for the purpose of having the parties announce on the record the agreement they had reached, which resolved all outstanding petitions, motions, and claims pending before the trial court. Present at the hearing in person

---

[2]This Court has a policy of protecting the identity of children in parental termination cases by initializing the names of the parties.

[3]Another attorney was initially appointed as guardian ad litem but was relieved of his duties in this matter due to a conflict of interest.

were Adoptive Parents and their attorney, Biological Grandmother and her attorney, counsel for Biological Mother, counsel for Biological Father, and the GAL. Biological Father and Biological Mother participated by telephone.[4]

At the hearing, the attorneys for the parties announced their agreement on the record. In response to the trial judge's questions, Biological Grandmother stated on the record her consent to the agreement. The trial judge questioned Biological Mother, and she stated on the record her consent to the termination of her parental rights and to adoption by Adoptive Parents. She agreed both were in the child's best interest. Biological Father acknowledged that he heard the attorneys announce the agreement and that he had discussed the agreement with his mother and his attorney. When the trial judge asked Biological Father if he agreed to the termination of his parental rights to the child, Biological Father at first indicated that he did not hear the question. The trial judge repeated the question, and Biological Father then stated that he agreed to the termination. When the trial judge asked Biological Father if he agreed that the termination of his parental rights and adoption by Adoptive Parents was in the best interest of the child, Biological Father said, "Yes, sir." When the trial judge asked Biological Father if he had any questions, he replied that he did not but added a comment that the telephone "keeps cutting us off." After that, the trial judge questioned Adoptive Parents, who agreed to assume the full rights and legal obligations of raising the child and to adopt her.

After all parties acknowledged their acceptance of the announced agreement, the trial court asked Adoptive Parents if the child's name was to be changed. Adoptive Parents replied in the affirmative. Both the Adoptive Mother and the GAL confirmed that the child wanted her name to be changed to the Adoptive Parents' last name.

Biological Father then stated that he wanted to speak to his attorney. After Biological Father's attorney spoke to him privately, the attorney relayed to the trial court that Biological Father was "balking as to the name change."[5] Counsel for Adoptive Parents suggested that the trial court make the decision on the child's name, and no party objected. The trial court observed that the child's name change was apparently not discussed as part of the parties' overall agreement. The trial court then held: "However, given the fact that there has been a surrender by both parents of their parental rights and acknowledged by both of them, and

---

[4]We surmise that Biological Mother participated by telephone, because it appears that she was still incarcerated at the time of the hearing and the transcript of the hearing shows that she participated. Biological Mother is not a party to this appeal.

[5]Biological Father had consented to the termination of his parental rights as to another child, older than the child that is the subject of this appeal, and that child apparently did not ask for a name change.

the adoption having been granted, that the name shall be changed to the wishes of the new legal parents, to the last name [of the Adoptive Parents], for all legal purposes."

On March 15, 2011, the trial court entered a written order of final judgment. The written order detailed the parties' agreement as announced in the hearing. It then terminated the parental rights of both Biological Father and Biological Mother and granted the adoption petition of the Adoptive Parents. As to the name change for the child from her biological last name to her adoptive parents' last name, the order stated:

> The parties were unable to agree on whether the minor's last name should be changed from [T] to [F]. Given the fact that there has been a surrender by both parents of their parental rights and the adoption having been granted, and at the request of the new adoptive parents, the minor child's name shall be changed to Montana [R. F.] for any and all legal purposes and a new birth certificate shall issue.

Biological Father now appeals.[6]

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Biological Father states the issues on appeal as follows:

> (1) That the Appellant was unable to fully participate in the announcement of the settlement agreement, due to technical problems with the telephone, thus violating statutory and constitutional law; and

---

[6]At oral argument in this appeal, Biological Father's counsel appeared to argue issues not raised in his appellate brief, such as arguing that Biological Father's agreement to the termination should be voided because the parties' agreement did not include the issue of the name change. We decline to address issues not raised in Biological Father's appellate brief. An issue not presented in the Statement of Issues in the appellate brief is not properly before the Court of Appeals. Tenn. R. App. P. 27 (a)(4); *Bunch v. Bunch*, 281 S.W.3d 406, 410 (Tenn. Ct. App. 2008) (quoting *Hawkins v. Hart*, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001)); *Coleman v. Lauderdale County*, No. W2011-00602-COA-R3-CV, 2012 WL 475606, at *3 n.4 (Tenn. Ct. App. Feb. 15, 2012). An item not specifically listed as an issue presented for review is considered waived, as this Court is under no obligation to search for, or derive, issues that are not specifically stated in accordance with Rule 27(a)(4). *Coleman*, 2012 WL 475606, at *3 n.4 (citing *Childress v. Union Realty Co.*, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002)). Therefore, we will address only the issues listed in the Statement of Issues in Biological Father's brief to this Court.

(2)  That the trial court erred in permitting the surname of the minor child to be changed without proof that such change was in the best interest of the minor child.

We note that, in his appellate brief, Biological Father does not seek to rescind his consent to the termination of his parental rights, nor does he appeal the trial court's termination of his parental rights.[7]

Under Tennessee Rule of Appellate Procedure 13(d), the trial court's findings of fact are reviewed *de novo* upon the record, presuming those findings to be correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d) (2011).  Questions of law are reviewed *de novo* with no presumption of correctness. ***Langschmidt v. Langschmidt***, 81 S.W.3d 741, 744-45 (Tenn. 2002).

## ANALYSIS

### Due Process

Biological Father argues that, as an incarcerated parent, he has the right to participate in a hearing on the termination of his parental rights, at least by telephone, pursuant to Tennessee Code Annotated § 36-1-113(f)(3).  This statute provides that the incarcerated parent must receive actual notice of the following:

> That the incarcerated parent or guardian has the right to participate in the hearing and contest the allegation that the rights of the incarcerated parent or guardian should be terminated, and, at the discretion of the court, such participation may be achieved through personal appearance, teleconference, telecommunication or other means deemed by the court to be appropriate under the circumstances; . . .

Tenn. Code Ann. § 36-1-113(f)(3) (2010).   Biological Father also cites ***Knight v. Knight***, 11 S.W.3d 898, 903 (Tenn. Ct. App. 1999), for the proposition that prisoners have a constitutional right to meaningful access to the courts and an opportunity to be heard.  Based on this, Biological Father contends that he was not able to participate fully in the hearing via telephone due to the technical difficulties.  He asserts that the trial court failed to ask him at the conclusion of the hearing if he heard and understood the complete agreement prior to

---

[7]Biological Father's attorney at the trial court level was permitted to withdraw.  Biological Father was appointed new counsel for this appeal, who was present for oral argument but has now also withdrawn.

ending the hearing, describing this as "most troubling." On this basis, Biological Father contends that this matter should be remanded to the trial court for a rehearing.

This issue is without merit, for numerous reasons. First, assuming *arguendo* that the statute Biological Father cites applies to a hearing held for the purpose of confirming an agreement on termination of parental rights and adoption, Biological Father was in fact allowed to participate by telephone. The statute does not state that the telephone connection for such a hearing must be perfect, and certainly Biological Father's constitutional right to meaningful access to the courts was not impacted by the telephone occasionally "cutting out."

Second, no due process concerns were raised by Biological Father in the trial court; there was no objection by Biological Father or his counsel that his right to be heard was impaired or that he was not able to fully participate in the hearing. At most, Biological Father made it known to the trial court that there were difficulties with the telephone "cutting out" intermittently. Once Biological Father made this known, the trial court carefully repeated all questions and received a substantive response from Biological Father to each question before proceeding. In light of this, there is no merit to Biological Father's contention that the trial judge should have *again* asked Biological Father if he heard and understood the agreement as announced. Moreover, prior to adjournment of the hearing, when the issue of the name change arose, Biological Father spoke privately by telephone with his attorney. Even after that, the only objection raised by Biological Father was to the name change. Thus, the issue was not raised to the trial court, and we find that it is waived on appeal. ***See Waters v. Farr***, 291 S.W.3d 873, 918 (Tenn. 2009).

Additionally, Biological Father fails to identify any way in which his due process rights or his ability to participate in the hearing were substantively affected by the technical difficulties with the telephone. Each time Biological Father told the trial court that he was having difficulty hearing, the trial court repeated the question and made sure to receive a response from Biological Father before going forward. In addition, Biological Father's attorney was physically present for the entire hearing. Having now had an opportunity to see the transcript of the hearing, Biological Father does not point to anything that he was unable to hear that was not repeated to him. Thus, he has pointed to no prejudice from any technical telephone problems. For all of these reasons, we find that this argument is without merit.

### Name Change

For the first time on appeal, Biological Father argues that the trial court erred in changing the child's name without hearing evidence on the matter. In support, Biological Father cites ***Barabas v. Rogers***, 868 S.W.2d 283, 287 (Tenn. Ct. App. 1993), and ***Halloran v. Kostka***, 778 S.W.2d 454, 456 (Tenn. Ct. App. 1988), for the proposition that the trial court should

make a best interest finding based on specific factors before ordering a name change. On this basis, Biological Father seeks to have the trial court's order on the child's name change vacated, or the matter remanded to the trial court for a rehearing on this issue.

Once again, this issue, as framed by Biological Father on appeal, was not raised to the trial court. To be sure, Biological Father objected to the name change at the hearing. The only basis for the objection, however, was the fact that Biological Father did not consent to it. Apparently, Biological Father had agreed to the termination of his parental rights as to an older sibling of the child at issue in this appeal, who had not requested a name change. We surmise that, for that reason, Biological Father did not consider in advance of the hearing that this child might desire to change her name to that of her adoptive parents. At any rate, the issue of the name change was not part of the parties' overall agreement.[8] At no point in the trial court proceedings, either during or after the hearing, did Biological Father contend that the trial court was required to conduct an evidentiary hearing on the issue.[9] Therefore, we hold that this argument was waived.

Biological Father did, of course, raise an objection in the trial court to having the name changed because he did not consent to it. Therefore, we address this issue.

On appeal, Biological Father points to no authority indicating that the trial court should refrain from permitting an adopted child to take the name of the adoptive parents merely because the biological parent, whose parental rights have been terminated, objects to the name change. Indeed, it is doubtful that Biological Father even has standing to make such an objection.

Standing limits access to the courts to those who have a justiciable claim. ***Thomas v. Tenn. Dep't of Transp.***, No. M2010-01925-COA-R3-CV, 2011 WL 3433015, at *6; 2011 Tenn. App. LEXIS 426, at *18-19 (Tenn. Ct. App. Aug. 5, 2011); ***Wood v. Metro. Nashville & Davidson Co. Gov't,*** 196 S.W.3d 152, 157 (Tenn. Ct. App. 2005); ***Metro. Air Research Testing Auth., Inc. v. Metro. Gov't of Nashville & Davidson Co.***, 842 S.W.2d 611, 615

---

[8]At oral argument in this appeal, Biological Father's attorney sought to have the entire agreement voided because it did not address the child's name change. Once again, this issue was not raised to the trial court and was not included in the Statement of Issues in Biological Father's appellate brief. Therefore, this argument is waived.

[9]Neither of the cases cited by Biological Father support his assertion that an evidentiary hearing is required where the biological parent's parental rights are terminated and the child is adopted. ***Barabas*** was a name dispute between the two unmarried biological parents. ***Barabas***, 868 S.W.2d at 285. ***Halloran*** was a post-divorce dispute in which the mother was enjoined by the father from referring to the child by the stepfather's surname. ***Halloran***, 778 S.W.2d at 455. Thus, both cases are inapposite.

(Tenn. Ct. App. 1992). In order to have standing to appeal a trial court's order, a party must be "aggrieved" by the order. **Clark v. Perry**, No. 02A01-9704-CH-00080, 1998 WL 34190562, at *7; 1998 Tenn. App. LEXIS 194, at *19 (Tenn. Ct. App. Mar. 19, 1998) (citing **Ray v. Trapp**, 609 S.W.2d 508, 512 (Tenn. 1980); **Koontz v. Epperson Elec. Co.**, 643 S.W.2d 333, 335 (Tenn. Ct. App. 1982)). In the legal sense, "[a] party is 'aggrieved' when he has an interest recognized by law which is injuriously affected by the order . . . ." **Clark**, 1998 WL 34190562, at *7; 1998 Tenn. App. LEXIS 194, at *19 (citing **Koontz,** 643 S.W.2d at 335).

The term "parental rights" is statutorily defined as the "legally recognized rights and responsibilities to act as a parent, to care for, *to name*, and to claim custodial rights with respect to a child." Tenn. Code Ann. § 36-1-102(38) (2010) (emphasis added). When the parental rights of a biological parent are terminated, "all legal rights and obligations of the parent or guardian of the child against whom the order of termination is entered and of the child who is the subject of the petition to that parent or guardian" are forever severed. Tenn. Code Ann. § 36-1-113(l)(1) (2010). This includes the right to name the child. Thus, the biological parent whose rights have been terminated no longer has any "right to object to the child's adoption or thereafter to have any relationship, legal or otherwise, with the child." Tenn. Code Ann. § 36-1-113(l)(1).

Conversely, adoption establishes a parent-child relationship between the adoptive parents and the adopted child "as if the adopted child had been born to the adoptive parents," and the child is deemed to be "the lawful child of [the adoptive parents], . . . for all legal consequences and incidents of the biological relation of parents and children." Tenn. Code Ann. § 36-1-121(a) (2010). Thus, the adoptive parents acquire all parental rights and responsibilities, including the right to name the child, and it is doubtful that Biological Father had "an interest recognized by law" in the child's name at that point.

Assuming *arguendo* that Biological Father has standing to contest the order permitting the child to change her name to that of her adoptive parents, we find Biological Father's arguments unpersuasive. He cites no reason why the child should not take the name of her new adoptive parents and does not even argue that the name change is not in the child's best interest.

We recognize the emotional impact on Biological Father of knowing that the child no longer bears his last name. We also recognize the child's legitimate desire to live her life sharing the surname of her new family. We decline to reverse the trial court's order allowing the child to change her surname to that of her adoptive parents.

## CONCLUSION

The decision of the trial court is affirmed. Costs on appeal are assessed against Appellant J.M.T., for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE