IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 21, 2024 Session

## BRETT THOMAS FERGUSON v. LUCY MARIA TRAUGHBER

**Appeal from the Juvenile Court for Robertson County**
No. 21-44575        Joel Perry, Judge
————————————————————

**No. M2023-01052-COA-R3-JV**
————————————————————

The trial court granted Appellee/Father's petition to change his son's surname from Appellant/Mother's surname to Father's. Mother appeals. Because Father did not carry his burden of proof to demonstrate that changing the child's name is in the child's best interest, we reverse and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
Reversed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KRISTI M. DAVIS, JJ., joined.

Joe R. Johnson, III, Springfield, Tennessee, for the appellant, Lucy Maria Traughber.

G. Clark Shifflett, III, Portland, Tennessee, for the appellee, Brett Thomas Ferguson.

## OPINION

### I. Background

The relevant facts are undisputed. Appellant Lucy Maria Traughber ("Mother") and Appellee Brett Thomas Ferguson ("Father"), who were never married, are the parents of Luke, who was born on September 12, 2021. On September 16, 2021, Father filed a petition styled "Complaint to Legitimate the Child and Establish a Parenting Plan, a Motion for a DNA Test, a Motion for a Temporary Parenting Plan and Child Support, and a Motion to Change the Child's Surname" in the Circuit Court for Robertson County. Mother answered and asked the circuit court to dismiss Father's petition. By order of October 27,

2021, the circuit court transferred the matter to the Juvenile Court for Robertson County ("trial court").

The parties agreed to DNA testing, which established Father's paternity. On December 13, 2021, Father filed a motion seeking visitation with the child. On December 27, 2021, Mother filed a motion to set temporary child support; on January 11, 2022, the Juvenile Court Magistrate ("Magistrate") entered a temporary parenting plan that did not include a child support order. By order of April 6, 2022, the Magistrate amended the parenting plan to award Father 80 days of parenting time per year but reserved the issue of child support. On May 9, 2022, the Magistrate entered an order setting Father's child support obligation at $444.00 per month and reserved the issue of child-support arrears.

On November 22, 2022, the parties entered an agreed parenting plan, under which the parties were named joint primary residential parents with equal parenting time. Based on their respective incomes, Mother's presumptive child support, under the Child Support Guidelines, was $158.00 per month. The parties agreed to a downward deviation such that neither party would receive child support, and Father would not be charged with retroactive support. However, the parties were unable to resolve Father's motion to change the child's surname.

On November 22, 2022, the Magistrate held a hearing on Father's petition to change the child's surname. As noted in the Magistrate's December 27, 2022 order, "Father[] requests for the Child's last name to be changed to that of the Father, 'Ferguson.' Mother requests that the Child's name remain 'Traughber' or proposes change to be a hyphenated last name of 'Traughber-Ferguson.'" In relevant part, the Magistrate held:

> Based upon the testimony, the Court finds that the Father's argument of creating difficulty and/or embarrassment is compelling and persuasive to find that a hyphenated version combining both last names of Mother and Father and ordering Child's last name to be "Traughber-Ferguson" would not promote nor serve the Child's best interest. The difficulty of the Child learning, writing, and time needed for "Traughber-Ferguson" after writing his first name on any document in school and in writing such a long name in general is compelling. The frustration of the Child in learning a long name of 18 (eighteen) characters is compelling. Ultimately, if the Child's last name were to be "Traughber-Ferguson" it would be more probable than not for it to be frequently necessary to utilize an abbreviated form of the hyphenated last name.
> Further, based upon the testimony the Court finds that there is [] compelling evidence through testimony of community respect, notability, and recognition to the "Ferguson" name. Due to the position of employment with a local area Chamber of Commerce to which the Paternal Grandmother, Sherry Ferguson holds and her many years of community involvement to

include with schools, business and government, the Child could only stand to benefit from the last name of the Father[]. Grandfather, David Ferguson, is an avid volunteer in the communities to which he is known for same and his philanthropic participation. The Child would undoubtabl[y] and convincingly benefit from bearing the "Ferguson" name.

For the aforementioned reasons, the Court finds that the Father has met his burden of proof and demonstrated that a name change to that of the Father's will further the child's best interest. Therefore, the child's last name shall be changed to FERGUSON.

On December 28, 2022, Mother moved for re-hearing before the juvenile court judge. Following a May 11, 2023, *de novo* hearing,[1] the trial court entered an order on July 13, 2023. As set out in context below, the trial court held that Father carried his burden of proof to demonstrate that, under the criteria set out in ***Barabas v. Rogers***, 868 S.W.2d 283, 287 (Tenn. Ct. App. 1993), it was in the child's best interest to change his surname from Mother's to Father's. Mother filed a timely notice of appeal.

## II. Issues Presented

We restate Mother's issue as follows: whether the trial court erred in concluding that Father carried his burden of proof to demonstrate that changing the child's surname is in the child's best interest.

Father raises the additional issue of whether the trial court erred in failing to apply the amended version of Tennessee Code Annotated section 37-1-107(d)(1) on re-hearing from the Magistrate's judgment.

## III. Standard of Review

Our standard of review in a non-jury case involving a petition to change a child's surname is the familiar Tennessee Rules of Appellate Procedure 13(d) standard: *de novo* upon the record with a presumption of correctness for the trial court's findings of fact unless the evidence preponderates otherwise. ***Halloran v. Kostka***, 778 S.W.2d 454, 455 (Tenn. Ct. App. 1988) (citing Tenn. R. App. P. 13(d)). The evidence preponderates against the trial court's factual findings when it supports another finding "with greater convincing effect." ***Hardeman Cnty. v. McIntyre***, 420 S.W.3d 742, 749 (Tenn. Ct. App. 2013) (citation omitted). Therefore, the trial court's findings of fact must contain sufficient

---

[1] Before the hearing, the trial court instructed the attorneys to brief the question of whether amendments to Tennessee Code Annotated section 37-1-107 regarding the presumption of correctness afforded to a magistrate's ruling on the trial court's *de novo* review. The trial court ultimately determined that, "[a]fter reviewing the briefs and having considered the new law, this court finds that [it is] in the interest of judicial economy for this court to proceed with ruling from the *de novo* hearing on the name change issue as requested by Mother through her filing for re-hearing."

underlying facts to clearly disclose the basis of the trial court's determinations. ***Lovelace v. Coley***, 418 S.W.3d 1, 34 (Tenn. 2013) (citations omitted). We review the trial court's conclusions of law *de novo* with no presumption of correctness. ***Rogers v. Louisville Land Co.***, 367 S.W.3d 196, 204 (Tenn. 2012).

## IV. Analysis

### A. Applicable Version of Tennessee Code Annotated section 37-1-107(d)(1)

Prior to April 25, 2023, Tennessee Code Annotated section 37-1-107(d) provided, in relevant part:

> Any party may, within ten (10) days after entry of the magistrate's order, file a request with the court for a de novo hearing by the judge of the juvenile court. The judge shall allow a hearing if a request for hearing is filed. No later than ten (10) days after the entry of the magistrate's order, the judge may, on the judge's own initiative, order a hearing of any matter heard before a magistrate.

The statute required the juvenile court judge to conduct "a traditional *de novo* hearing" when a party requested a new hearing from a magistrate's order. ***Kelly v. Evans***, 43 S.W.3d 514, 515 (Tenn. Ct. App. 2000). Under this version of the statute, "a full evidentiary trial" was required following a timely request for a hearing before the judge, and the judge was required to "'decide the issues without deference to the magistrate's actions.'" ***Stine v. Jakes***, No. M2021-00800-COA-R3-JV, 2022 WL 2297647, at *10 (Tenn. Ct. App. June 27, 2022) (quoting ***In re Piper H.***, No. W2015-01943-COA-R3-JV, 2016 WL 5819211, at *6 (Tenn. Ct. App. Oct. 5, 2016)).

Effective April 25, 2023, the statute was amended to provide, in relevant part:

> (d)(1)(A) A party may, within ten (10) days after entry of the magistrate's order, file with the court a written request for a review of the record by the juvenile court judge. The request must include written exceptions to the magistrate's findings, conclusions, or recommendations, and specify the findings to which the party objects, the grounds for the objection, and the party's proposed findings, conclusions, or recommendations.

> (B) The juvenile court judge shall not grant a review when the party requesting the review did not participate in the hearing before the magistrate in good faith.

> € A review by the juvenile court judge is not a hearing and is limited to those matters for which exceptions have been filed.

- 4 -

(D) The juvenile court judge shall afford the magistrate's findings, conclusions, and recommendations a presumption of correctness. The judge shall modify the magistrate's findings only when, after review, the judge makes a written finding that an abuse of discretion exists in any or all of the magistrate's findings, conclusions, or recommendations.

€ The judge shall issue written findings, conclusions, or recommendations, or may schedule the matter for a new hearing of any issues the judge deems necessary, with notice to all parties.

(2) Notwithstanding subdivision (d)(1), no later than ten (10) days after the entry of the magistrate's order, the judge may, on the judge's own initiative, order a new hearing of any matter heard before a magistrate.

As noted above, the juvenile court judge ordered the parties to brief the question of which version of the statute applied to Mother's request for a re-hearing. However, in the interest of judicial economy, the judge heard the matter *de novo* and affirmed the Magistrate's judgment without deciding the question of which version of the statute applied.

In his brief, Father asserts that the juvenile court judge "should only have afforded [the Magistrate's] findings, conclusions, and recommendations, a presumption of correctness, and then allowed a re-hearing once and if he determined [the Magistrate] committed an abuse of discretion on any issue." Nonetheless, Father concedes that any error on the part of the trial judge with respect to which version of the statute was applicable was "harmless." Thus, to the extent Father raises the issue, he also waives it.

Although Father's issue is waived, we note that section 37-1-107(d)(1)€ affords the judge discretion to schedule a new hearing of any issue he or she deems necessary. Additionally, section 37-1-107(d)(2) permits the judge to order a new hearing of any matter that was heard by the magistrate. Accordingly, we agree with Father's assessment that any error concerning the applicable version of the statute was harmless. We now turn to the question of whether Father carried his burden of proof to demonstrate that changing the child's surname is in the child's best interest.

### B. Burden of Proof

Unless both parents request otherwise, the surname on the birth certificate of a non-marital child is that of his or her mother. Tenn. Code Ann. § 68-3-305(b). Anyone who petitions the court to change a child's surname, including a biological parent, bears the burden of proof to demonstrate, by a preponderance of the evidence, that "the change promotes the child's best interests." *Barabas v. Rogers*, 868 S.W.2d 283, 287 (Tenn. Ct. App. 1993) (citations omitted). The *Barabas* Court set out a list of non-exclusive factors

for the court to consider in addressing the child's best interest in the context of a petition for name change. These factors include: (1) the preference of the child; (2) the potential effect of the change on the child's relationship with both parents; (3) the amount of time the child has had his or her current surname; (4) "the degree of community respect associated with" each parent's surname; and (5) "the difficulty, harassment, or embarrassment that the child may experience from bearing either its present or its proposed surname." **Id.** (citations omitted). The trial court is not required to make findings with respect to each of these criteria, and it may consider other factors. **Rothbauer v. Sheltrown**, No. W2021-00607-COA-R3-JV, 2022 WL 713422, at *1 (Tenn. Ct. App. Mar. 10, 2022) (citation omitted). "'[T]the ultimate determination is the child's best interest.'" **Id.** (quoting **In re Khrystchan D.**, No. M2018-01107-COA-R3-JV, 2020 WL 3494467, at *6 (Tenn. Ct. App. June 26, 2020)), and the court should not change the child's surname unless it determines that the change is in the child's best interest. **Barabas**, 868 S.W.2d at 287. (citations omitted). Although this best-interest analysis is largely a factual determination, **Rothbauer**, 2022 WL 713422, at *1, we review the record *de novo* to determine whether the petitioner carried his or her burden to demonstrate, by a preponderance of the evidence, that changing a child's name is in the child's best interest. **Barabas**, 868 S.W.2d at 287 (citations omitted) (concluding that father did not carry his burden of proof to demonstrate changing child's name was in child's best interest and vacating trial court's judgment); **Lockhart v. Higgins**, No. M2020-01370-COA-R3-CV, 2021 WL 3485913, at *1 (Tenn. Ct. App. Aug. 9, 2021) (holding that father "failed to prove that changing the child's surname was in the child's best interest."); **Knipper v. Enfinger**, No. W2019-02130-COA-R3-JV, 2020 WL 5204227, at *4 (Tenn. Ct. App. Aug. 31, 2020) (reversing judgment of trial court after concluding evidence did not support finding that name change was in the child's best interest); **In re McKenzie Z.**, No. M2017-00484-COA-R3-JV, 2018 WL 1508574, at *7 (Tenn. Ct. App. Mar. 27, 2018) (vacating trial court judgment changing name of non-marital child); **Parrish v. Griggs**, No. W2015-02504-COA-R3-JV, 2017 WL 2297588, at *9 (Tenn. Ct. App. May 25, 2017), *perm. app. denied* (Tenn. Oct. 5, 2017) (finding father did not present evidence that changing child's surname was in child's best interest and reversing trial court's judgment); **In re A.C.S.**, No. M2008-898-COA-R3-JV, 2009 WL 348510, at *1 (Tenn. Ct. App. Feb. 12, 2009) (holding "the record does not contain sufficient, competent evidence to support the Juvenile Court's conclusion that changing the child's surname from that of Mother to that of Father is in the child's best interest."); **Whited v. Fleenor**, No. E2002-01185-COA-R3-JV, 2003 WL 1092968, at *2-*3 (Tenn. Ct. App. Mar. 13, 2003) (reversing trial court judgment and holding "the father failed to carry the burden of proof that it was in the child's best interest to change the child's surname to that of the father.").

In reviewing name-change cases, this Court has held that:

"The amount of proof required to justify the [name] change is 'not insubstantial.' Minor inconvenience or embarrassment is insufficient." **In re A.C.S.**, No. M2008-898-COA-R3-JV, 2009 WL 348510, at *3 (Tenn. Ct.

- 6 -

App. Feb. 12, 2009) (citations omitted). Furthermore, "[a] parent's preference that a child's surname be changed is not sufficient to justify such relief, and such preference is not evidence that a name change is in the child's best interest." **Millmeyer** [**v. Whitten**, No. W2019-00586-COA-R3-JV,] 2019 WL 5837687, at *2 (Tenn. Ct. App. Nov. 7, 2019) (citing **Whited**, 2003 WL 1092968, at *2-3).

**Lockhart**, 2021 WL 3485913, at *2. The law does not presume that a child should bear his or her father's surname. **Whited**, 2003 WL 1092968, at *1. Rather, the party petitioning to change a child's surname must proffer evidence to demonstrate that the requested change would be more beneficial than the original name. **Id.** "The courts should not change a child's surname unless the change promotes the child's best interests." **Millmeyer**, 2019 WL 5837687, at *3.

In its July 13, 2023 order, the trial court determined that **Barabas** factors one and two were not applicable. As to the remaining three factors, *i.e.* (1) the amount of time the child has had his or her current surname; (2) "the degree of community respect associated with" each parent's surname; and (3) "the difficulty, harassment, or embarrassment that the child may experience from bearing either its present or its proposed surname," **Barabas**, 868 S.W.2d at 287, the trial court made the following findings:

3. <u>Barabas</u> factor three does apply.

This child is the tender age of twenty months. The current last name of "Traughber" has existed for this period of time or at least until order entered November 22, 2022. There is a 50/50 Agreed Parenting Plan whereas both parents enjoy primary designation.

4. <u>Barabas</u> factor four does apply.

The Court heard lengthy testimony from the Father's witnesses as to the "Ferguson" name. This testimony included the name being associated to extensive military service within the "Ferguson" family by the Father and other relative(s). A history of military service and association was demonstrated. The "Ferguson" name and family is heavily associated with local volunteerism, community events, and strong church affiliation to include leadership as paternal Grandfather (Ferguson) serves as a deacon. Further testimony provided that paternal grandmother (Ferguson) is employed in the capacity as President/CEO of a local Chamber of Commerce to which her position is widely known and recognized. In this position paternal grandmother (Ferguson) has amassed numerous contacts, associations, networks, to include political, education, community, non-profit, and etc. The testimony showed an abundance of positive and respected

- 7 -

affiliations of the 'Ferguson" name within and around the local area.

The testimony as to the Mother's last name of "Traughber" provided that the there is a sibling to this child who bears the name of "Traughber." The maternal grandfather, last name "Traughber," is now deceased. That the maternal grandmother, with last name "Traughber," has been employed at a local bank for several years and has numerous public contacts through her employment. The testimony provided that "Traughber" last name is respected through the maternal grandmother's many years as a bank employee.

5. <u>Barabas</u> factor five does apply.

Based upon the above, the Court finds that the Father has met his burden of proof by a preponderance of the evidence and that the proof was substantial to show that it is in the child's best interest for his name to be that of the Father's "Ferguson." The child is a mere twenty months [] old, enjoying a 50/50 co-parenting schedule, a great relationship exists between the child and his Father as well as the child and his Mother, and the proof was ample as to the "Ferguson" last name carries a great deal of community respect across multiple counties and extends within the middle Tennessee area.

On appeal, Mother argues that the trial court erred in its best-interest determination. She submits that the child's birth certificate, social security card, and medical records demonstrate that the child's surname was that of Mother at the time of the *de novo* hearing before the juvenile court judge. She argues that: (1) the child is known by Mother's surname in his community; (2) the trial court failed to consider that the child has a half-sibling who bears Mother's surname; (3) the child and his sibling would attend the same school and other events; and (4) it would cause confusion and embarrassment to the child if he did not share his brother's/Mother's surname. Mother further argues that there is insufficient evidence to establish that Father's surname is superior to Mother's in the community or that the child would benefit from changing his surname to Father's. She contends that Father's testimony reflects his own concern as to how he will be viewed as a parent if the child does not have his surname and does not bear on how the child will be perceived in the community. As such, Mother maintains that Father failed to carry his burden to demonstrate that changing the child's surname is in the child's best interest. We agree.

Turning to the record, Father testified, in relevant part, as follows:

Q [to Father]: Why do you believe the [Father's] surname would be more beneficial to [the child]—which is the child's name—than [Mother's]?

A. Well, I believe that him having the same last name as his father would be great. Because, generally, when a child doesn't have their father's last name that's the assumption that father is not involved. I'm a very involved father, and I think, respectfully, that he would benefit—people in school wouldn't ask him questions or tease him about not having his father's last name.

Q. Okay. And as far as when you're talking about having your last name, you think it would benefit him, do you mean to say that you believe -- is it your testimony that you believe it would be more difficult for him to have a different last name than you?

A. Yes.

Q: Is that because it is the generally accepted practice in this area that most children carry their father's last name?

A. Yes.

Q: Is that what you have experienced in your day-to-day life?

A. Yes.

Q: Okay. And what I'm saying specifically, and what I want you to say, if you would, is, what have you experienced in terms of seeing children, father's surnames? What do you typically see?

A. I just typically see that when the child does have the father's last name that father is involved and he there's no question to the other kids saying things to him or asking questions. So I feel like it's just a positive, and would, like I said, be more beneficial to him to have his father's last name rather than not.

Father further testified that he would be embarrassed if the child retained Mother's last name because "when a child doesn't have their father's last name it's typically under the assumption that that child's father is not involved. I'm very much involved." Father acknowledged that the child's half-brother bears Mother's surname and that the children, who are close in age, will hold themselves out as brothers, and will attend the same schools. When asked whether it "might cause some confusion and embarrassment for them to have different names when they're asked about it at school[,]" Father stated:

I don't believe that would be the same level of embarrassment or concern as a father's. I understand. No disrespect to his brother, but they have different fathers. His father is not involved; I am.

Despite Father's opinions, as noted above, the law does not presume that a child should bear his or her father's surname. *Whited*, 2003 WL 1092968, at *1.

Although Father testified that his surname is not superior to Mother's and acknowledged that Mother's last name is not disrespected in the county, his testimony intimated his belief that his surname is more recognized and respected in the community. Father testified that his mother ("Paternal Grandmother"), the CEO of the Portland Chamber of Commerce in Sumner County, is "well-known in the Sumner County, especially area[,] [a]nd is well-respected by many, as well, in Robertson County," where Father resides. Father also testified that his father ("Paternal Grandfather") is a deacon at Portland First Baptist Church, where Father attends services.

There is no dispute that Paternal Grandmother and Paternal Grandfather are respected in their community, and both are active participants in the child's life. The grandparents' respective testimony largely reiterates Father's position. When asked whether, based on her position with the Chamber of Commerce, the Ferguson surname enjoys a better reputation than Mother's in the community, Paternal Grandmother testified:

> I don't think it has anything to do with the position. I think it's just the person that you are. And I think—not that it's any better.

Paternal Grandmother stated:

> I would say that we live in the United States of America. Typically, a father who is involved in their child's life has the father's last name. And, you know, other countries do things differently. Here that's kind of where we go. And if at some point that child wants to change his name [from Mother's to Father's] then he has to go through the whole battle with, oh, am I'm going to hurt my mom's feelings because I'd like to have my dad's last name because that's what people do or are people are going to make fun of him because, well, do you -- is your dad even around because you don't have your dad's last name.

When asked whether she would agree that "it's not so much of whose name is more prominent in the community" and whether "what [she was] saying [is that] the real issue is the father's last name should go to a child[,]" Paternal Grandmother replied:

> If the father's involved. If the father's not involved, that's completely—and I know that there is another child that doesn't have the father's name. But that should not affect [the child] because—I mean, he can't help that he has a brother that does not have a father's last name. I think you're penalizing him for not allowing that.

- 10 -

Similarly, when asked how Father's last name would benefit the child more than Mother's, Paternal Grandfather replied:

> Again, I'll go the heritage route as well. You know, it's just that the father's name, you know, I was able to carry my father's name despite having a different name than my mother, my brother.

When question as to how his surname has benefited him, Paternal Grandfather replied:

> Well, I'm going to say it's helped with heritage. You know, I've got two boys continuing to carry the name. I've got another grandson outside of [the child] that has my name.

He further stated:

> I don't think that the [paternal surname] is above any other. But when I look at, again, someone with a father that's involved, having their father's last name, you know, I would say that weighs heavily from just my perspective.

Paternal Grandfather also testified that the child's paternal great-grandfather served in the military and is the VFW commander in Franklin.

Mother is a customer account representative with Cumberland Electric and lives with Maternal Grandmother and Mother's older son, who bears Mother's surname. Mother testified that she has considerable interaction with the local community through her employment. Mother also testified that she and Maternal Grandmother volunteer with several community organizations and events. She testified that, although Father's surname does not have a negative reputation, it would be in the child's best interest to share her surname and his brother's. When questioned regarding her concerns about the child having Father's last name, Mother replied:

> [H]is peers would be questioning about the last name and that how is that your brother if they don't have the same last name. I don't feel that a child should have to explain the situation and to make the boys feel like they're divided.

Clearly, Mother's testimony contemplates the child's feelings and not her own. Mother also testified that she has "no intentions" of changing her last name should she marry.

Maternal Grandmother is the head teller at the Old Hickory Credit Union and, as such, has significant interaction with the community. Maternal Grandmother testified that she volunteers with several community organizations and stated that Mother also has a

"very well-respected reputation," particularly as a "hard worker."

Clearly, both families are long-time residents of Middle Tennessee, and both families are upstanding and involved members of the community. As Mother's counsel stated at the hearing, "[t]hese are all hard-working people, good people, law-abiding people." Nothing in the record indicates that either surname would cause the child "difficulty, harassment, or embarrassment." The record does not suggest that Father has benefited from his surname in an identifiable way or that it is more well-respected than Mother's.

Father's statements that the child should bear his surname so that it will be apparent to the community that Father is involved in the child's life is not persuasive. These statements bear more on Father's (and his parents') personal opinions related to their perception of cultural traditions with respect to an "active father." They do not bear on the child's best interest. Accordingly, this testimony did not operate to shift the burden of proof to Mother. *See Whited*, 2003 WL 1092968, at *3 (holding that Father failed to meet his burden of proof to show that a name change was in the child's best interest so as to shift the burden of proof to mother, and further holding that "so long as the father pays support and remains actively involved in his son's life by faithfully exercising visitation, the child will know his father and both can enjoy a father and son relationship without a change in the surname."). Although Father failed to meet his burden of proof to show that a change of surname would be in the child's best interest, it is apparent that no matter the child's last name Father will be perceived as an actively involved father by virtue of his participation in the child's life. As noted by Mother's counsel, "regardless of what this child's last name is, there are people on both sides that can help open doors. But it will also depend on the child growing up to take advantage of those circumstances however they may be available."

## V. Conclusion

For the foregoing reasons, the trial court's order is reversed, and the case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of this appeal are assessed to the Appellee, Brett Thomas Ferguson. Execution for costs may issue if necessary.

         s/ Kenny Armstrong
         KENNY ARMSTRONG, JUDGE