In re the Marriage of Peggy Jo (Danielson) JACOBS, petitioner, Appellant,

v.

Bradley R. JACOBS, Respondent.

No. 50150.

Supreme Court of Minnesota.

Aug. 21, 1981.

Ragnhild Anne Westby, St. Paul, for appellant.

Jack S. Jaycox, Edina, for respondent.

OTIS, Justice.

■ This is an appeal from an order of the district court, Fourth Judicial District, amending the findings of fact and conclusions of law of the December 13, 1977 judgment and decree granting Danielson and Jacobs a divorce. The order modified the divorce decree to reflect that a child, Seth Daniel, was conceived during his parents' marriage; to provide for custody, support obligations, and visitation rights; and to change the child's surname to "Jacobs."[1] Danielson appeals.

Four issues are involved in this appeal: first, whether the evidence was sufficient to support the finding that Seth Daniel was conceived during his parents' marriage; second, whether the support award was sufficient; third, whether the support should have begun on September 26, 1978, the date of Seth Daniel's birth; and finally, whether changing Seth Daniel's surname without a hearing to determine his best interests was proper.

Examining the evidence we conclude that the evidence fully supports the trial court's finding that the child was conceived during his parents' marriage and that the support award was adequate. As to the timing of the support award, we hold, absent good reason, the obligation to support dates from a child's birth. Finally, we decide that when parents cannot agree on the surname to be given to their child at birth, the best interests of the child must control the resolution of the dispute. We therefore affirm in part and reverse and remand, in part.

Jacobs and Danielson were first married on March 15, 1976. This marriage ended in divorce in May of the same year. The parties remarried on June 15, 1977, separated in September, and divorced on December 13, 1977. Danielson gave birth to Seth Daniel on September 26, 1978. It is undisputed that Jacobs is the child's father.

Shortly after the child's birth, Jacobs petitioned the court to modify the parties' divorce decree to reflect that a child had been born of the marriage and to determine his child support obligations and visitation rights.[2] A hearing was held on March 19, 1979.

■ Our review of the record reveals that the trial court's finding of legitimacy was supported by the evidence. Jacobs testified that he and Danielson had sexual intercourse on December 12, 1977, the evening before the parties' second divorce was granted. Medical testimony by Dr. James Mueller, Danielson's gynecologist and obstetrician, was not inconsistent with Jacob's belief that conception occurred on December 12, 1977.[3] The trial court's finding is, therefore, affirmed.

1. In the trial court's first order amending the divorce decree, April 25, 1979, the court noted the child's surname as "Danielson." In response to a letter from Jacobs contending that a legitimate child should bear his father's surname, the trial court amended the April 25, 1979 order changing the child's surname to "Jacobs." We do not decide at what point a trial court loses jurisdiction to change a child's surname through modification of a divorce decree. Since the child was not provided for in the original decree, the trial court had the authority to change the child's surname in the context of a petition to amend the divorce decree. *Contra, Hurta v. Hurta*, 25 Wash.App. 95, 605 P.2d 1278 (1979).

2. Jacobs did not seek to change the child's surname until after the court issued its original order amending the divorce decree. See n. 1 *supra*.

3. From an ultra sound test performed on June 5, 1978, Dr. Mueller concluded that the fetus was twenty-five weeks old, placing conception sometime during the week of December 11,

The trial court placed the child with Danielson and awarded support in the amount of $150.00 per month with the father's obligation to support to begin on May 15, 1979. Danielson contends that the support award is insufficient and that Jacobs' obligation to support Seth Daniel should have commenced on the day of the child's birth, September 26, 1978.

We are not persuaded by Danielson's assertion that, in light of Seth's father's income and expenses, the support award was inadequate. This contention fails to recognize that determination of a support award includes consideration of not only the noncustodial parent's financial needs and resources but also numerous other factors. Minn.Stat. § 518.17, subd. 3 (1980). A review of the record convinces us that the trial court did not abuse its discretion in determining Jacobs' obligation of support.

We do agree, however, with Danielson's contention that a parent's obligation to support his child commences with the child's birth. *See Larkin v. Larkin,* 261 Minn. 414, 113 N.W.2d 75 (1962); *Beigler v. Chamberlin,* 138 Minn. 377, 165 N.W. 128 (1917). Having found no good reason for Jacobs' obligation to support Seth Daniel to begin eight months after the child's birth, we reverse.

The final issue presented for consideration is whether the trial court's changing of Seth Daniel's surname without a hearing to determine the child's best interests was proper. We hold that neither parent has a superior right to determine the initial surname of their child and therefore the child's best interests must govern the resolution of the parents' quarrel as to the initial surname to be given to the child. We therefore reverse and remand for a hearing and determination consistent with

our opinion in *Application of Saxton,* 309 N.W.2d 298 (Minn.1981).[4]

Affirmed in part, reversed and remanded in part.

---

1977. According to Dr. Mueller, ultra sound testing has an error factor of ten to fourteen days. Thus, conception could have occurred any time during the month of December.

4. Unlike the children in *Saxton,* Seth Daniel has not borne either surname, "Jacobs" or "Danielson," for any length of time. Thus, in

this case, the length of time the child has borne his surname is not a factor. We also note that a finding of illegitimacy in the instant case would not have affected the resolution of the dispute as to the child's surname since Jacobs has asserted his parental rights and recognized his parental obligations.