IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 22, 2011 Session

## IN RE: A.M.K.

**Appeal from the Juvenile Court for Knox County**
**No. F9235      Timothy Irwin, Judge**

**No. E2011-00292-COA-R3-JV-FILED-AUGUST 11, 2011**

This appeal concerns the changing of a minor child's surname. Tyler Weseman ("Father") and Amanda King ("Mother") are, respectively, the father and mother of the minor child A.M.K. ("the Child"). Father filed a petition to establish parentage and co-parenting time. Father sought to have the Child bear his surname. The Juvenile Court for Knox County ("the Juvenile Court") changed the Child's surname from King to King-Weseman. Mother appeals. We hold that the evidence does not preponderate against the Juvenile Court's finding that changing the Child's surname to King-Weseman is in the Child's best interest. We further hold that the Juvenile Court did not abuse its discretion in declining to award attorney's fees to Mother. The judgment of the Juvenile Court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., and JOHN W. MCCLARTY, J.J., joined.

David L. Valone, Knoxville, Tennessee, for the appellant, Amanda King.

Farrell A. Levy, Knoxville, Tennessee, for the appellee, Tyler Weseman.

## OPINION

## Background

Father and Mother dated for a time in 2008. Mother became pregnant. In November 2008, before the Child was born, Father filed his Petition to Establish Parentage and Co-Parenting Time. Father asked, among other things, that "based upon the results of the DNA testing, the child take Petitioner's surname." Mother, in her answer, demanded strict proof regarding Father's paternity of the Child. The Child was born in May 2009 and was given Mother's surname. The Magistrate of the Juvenile Court entered Findings and Recommendations, reserving the matter of the Child's surname. In April 2010, the Juvenile Court entered an order *nunc pro tunc* to June 24, 2009 establishing Father's paternity of the Child.[1] Also in April 2010, the Magistrate of the Juvenile Court entered an order *nunc pro tunc* to March 17, 2010 denying Father's request to have the Child's surname changed. The Magistrate of the Juvenile Court later denied Mother's request for attorney's fees. Father appealed the Magistrate's decision pertaining to the Child's surname and Mother appealed the Magistrate's denial of her attorney's fees. In September 2010, this matter was heard before the Judge of the Juvenile Court.

Father testified first. Father stated that he worked at Saint Mary's North Medical Center. Father testified that he had no criminal record. In September 2008, Mother informed Father that she was pregnant and that he was the father. Mother and Father were dating at that time. Father stated that he wished he could have been present at the birth of the Child in May 2009 but that he never was notified by Mother's family of the event.

Father testified that he had time with the Child every week from Tuesday morning through Thursday. Father testified regarding the activities he engages in with the Child:

> We do all kinds of stuff. I've got a back pack I put her in and we go hiking. I take her to the pool. We read a lot of books. We go to the library. A few weeks ago I signed her up for gym classes at the Little Gym in Knoxville. It's on Kingston Pike. So I take her there. It's every Wednesday. It's just kind of like a gymnastics thing for small children. We take naps, play outside, horseplay, you know, things of that nature.

Father stated that he initially did not pay child support after the Child was born as he was not

---

[1]The order did not specifically state that Father was the father of the Child. An agreed order was later entered correcting the clerical error and specifically identifying Father as the father of the Child.

certain that he was the Child's father, but testified: "[O]nce the paternity was set they calculated the support for, I guess, the past month sir I paid immediately. Never missed a payment. I've never made a late payment. I don't know what more I could do." Father stated that, when younger, as part of his sports activities, people would call him "Weissy" as a nickname. Regarding why he believed it was important for the Child to share his surname, Father testified that he had to explain to people the reasons behind the Child's surname and considered how she would have to answer such questions when she got older.

Marcus Weseman ("the Grandfather"), Father's father, testified next. The Grandfather stated that he is Vice President at Oak Ridge Associated Universities and he directs the "Health Education Programs which are primarily immunization for children, young adults, [and] families." The Grandfather testified regarding his activities in the community:

> I coached American Youth Soccer Organization Soccer for eleven (11) years in Knox County in the Ball Camp Region. I coached girl's teams, my daughter's teams from age 5 to 15. I have … was on the Board of Directors for the soccer organization in the Ball Camp Region. Very active in supporting children's causes. I've been a major financial supporter of COSA for their fund raising events. Put up money for the sculpture that's in front of Juvenile Court. So I have been … and before that I was a school teacher in Knox County … or Knox City and before that I worked at the Juvenile Home for Juvenile Court. So most of my career, my volunteer activities are all aimed at improving the lives of children and young adults.

The Grandfather stated that he did not live in East Knox County like Mother but that he had "people that work for me that live in East Knox County that know [Father] and that know me." Father's sporting activities took place around ten years ago and people in East Knox County did not know the Grandfather through sporting activities related to Father since then.

Wesley Trout ("Trout"), Bible Associate Pastor at North Acres Baptist Church, testified that he had known Mother for around three years and that the King family had a good reputation in the community. Trout testified that he knew that the Child has a younger sister with the surname King. Trout stated that he was concerned that, were the Child's surname changed, children might inquire as to why. On cross-examination, Trout admitted that children at school also might wonder why the Child does not share the same surname as her father.

Kathy King ("the Grandmother"), the Child's maternal grandmother, testified

that she and her family have lived in East Knox County for more than fifty years. The Grandmother stated that both her granddaughters have the surname King. The Grandmother testified that she was concerned about her granddaughters having different surnames as they were close together and would attend the same school. The Grandmother stated that her family did mission work and that the Child is known by the surname King.

Mother testified last. Mother stated that she worked as an imaging tech for Fort Sanders West Diagnostic Center. A number of documents were entered as exhibits showing that, up to the time of the trial, the Child had gone by the surname King. Mother testified that she maintained health insurance on the Child even though Father was supposed to do so pursuant to the parenting plan. Mother stated that she had concerns about her daughters having different surnames and how difficult it would be for them to explain the difference. Mother testified that if she got married she would retain the name King since both her daughters had the name King. Mother, however, also stated that she would not neglect to have additional children simply to insure that she and her two daughters could all keep the same surname.

Following the testimony of the witnesses, the Juvenile Court stated in its "Judge's Ruling":

> As I said earlier with a child this young the <u>Barabbas</u> factors often times don't make enough difference one way or the other. They are among the factors to be considered is what the case language in <u>Barabbas</u> tells us. I've listened very closely to the relevant parts of both Party's arguments and the witnesses in this case. This is a lucky child. She's got two strong families that care a great deal about how she does in life. This child is not the same as her sister. She doesn't have the same parentage. She doesn't have the same lineage. There's no requirement that her name be the same as her sister. I think it only equitable in this particular situation with the father spending three (3) days and two (2) nights a week with the child, with the father meeting all his obligations, with him being so involved in the child's life that this child's name be hyphenated and so go forth from this day forward with the name King-Weseman. I think it's fair that this child be called by the last name of both strong families. That it's in her best interest to have both of these proud families' names associated with her. I think that retaining the name King in some form or fashion will alleviate some of the concerns that the mother and her family have had. And I think in this case, although I don't always find this way, a hyphenated name makes sense.

In December 2010, the Juvenile Court entered an order changing the Child's surname to

King-Weseman and denying Mother's request for attorney's fees.

## **Discussion**

Though not stated exactly as such, Mother raises two issues on appeal: 1) whether the Juvenile Court erred in changing the Child's surname to a hyphenated surname; and 2) whether the Juvenile Court erred in declining to award attorney's fees to Mother.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first address whether the Juvenile Court erred in changing the Child's surname to a hyphenated surname. We have addressed the changing of a child's surname:

> The courts should not change a child's surname unless the change promotes the child's best interests. *Halloran v. Kostka*, 778 S.W.2d 454, 456 (Tenn. Ct. App. 1988); *see also In re Marriage of Schiffman,* 169 Cal.Rptr. 918, 921, 620 P.2d 579, 582 (1980); *In re Cardinal*, 611 A.2d at 517; Kristine C. Karnezis, Annotation, *Rights and Remedies of Parents Inter Se With Respect to the Name of Their Children*, 92 A.L.R.3d 66 § 8.5 (Supp. 1992). Among the criteria for determining whether changing a child's surname will be in the child's best interests are: (1) the child's preference, (2) the change's potential effect on the child's relationship with each parent (3) the length of time the child has had its present surname, (4) the degree of community respect associated with the present and proposed surname, and (5) the difficulty, harassment, or embarrassment that the child may experience from bearing either its present or its proposed surname. *In re Saxton*, 309 N.W.2d 298, 301 (Minn.1981); *Bobo v. Jewell*, 528 N.E.2d at 185; *Daves v. Nastros*, 105 Wash.2d 24, 711 P.2d 314, 318 (1985). The parent seeking to change the child's surname has the burden of proving that the change will further the child's best interests. *In re Petition of Schidlmeier*, 344 Pa.Super. 562, 496 A.2d 1249, 1253 (1985); *In re M.L.P.*, 621 S.W.2d 430, 431 (Tex. Ct. App. 1981).

*Barabas v. Rogers*, 868 S.W.2d 283, 287 (Tenn. Ct. App. 1993)

Father directs our attention to the case of *Conner v. King*, No. W2009-00511-COA-R3-JV, 2009 WL 3925164 (Tenn. Ct. App. November 18, 2009), *Rule 11 Appl. Perm. Appeal Denied May 11, 2010*, which expands upon the five-pronged *Barabas* criteria. We stated:

> Although these criteria "may offer a court guidance" in determining whether a name change would be in the child's best interest, they "are not exclusive and obviously may not be relevant given the facts of a particular case." *Keith v. Surratt*, No. M2004-01835-COAR3-CV, 2006 WL 236941, at *8 (Tenn. Ct. App. Jan. 31, 2006). Where a father requests that his child be given his surname, courts have also considered the nature of the father's relationship with the child. *See, e.g., State of Tenn., Dep't of Human Servs. v. Sanders*, No. 03A01-9705-JV-00184, 1998 WL 8516, at *2 (Tenn. Ct. App. Jan. 13, 1998) (noting that the child "knows his father, who provides for him; a bond has developed between them, [and] he has been legitimated"); *Halloran v. Kostka*, 778 S.W.2d at 456 (noting that the father had "maintained contact with and supported [the child] throughout her life").

*Conner*, 2009 WL 3925164, at *2.

In this case, the testimony at trial established that Father maintained a good relationship with the Child. Indeed, Father testified to a "very strong bond" with the Child and described his active participation in the Child's life. Both parties advance concerns about the Child's surname, particularly regarding potentially embarrassing questions to the Child that might arise from others as to why the Child does not share the surname of her father or sister, as the case may be. More pertinent to our analysis is the evidence of a strong bond between Father and the Child. In *Conner*, given the facts of that case, we found that hyphenating the child's surname to include his father's surname would "affirm his bond with [his] Father." *Conner*, 2009 WL 3925164, at *3. The father in *Conner*, among other things, asserted his paternity prior to the birth of his child and engaged in visitation with the child as Father has done in this case. *Id.* at *2.

We are persuaded that hyphenating the Child's surname will affirm her bond with Father, as well. This bond, as well as the strength of both families as evidenced in the record, is effectively reflected through a hyphenated surname combining the family names. Though neither party in this case initially advocated a hyphenated surname,[2] there is

_____

[2]On appeal, Father states that, solely based on the reputation of the Weseman name in the community, the Juvenile Court should have given the Child his surname outright, but he considers the

(continued...)

sufficient evidence in the record to support the Juvenile Court's finding that changing the Child's surname to King-Weseman is in her best interest. With this outcome, the Child can, as the Juvenile Court stated in explaining its ruling, "be called by the last name of both strong families." The evidence does not preponderate against the Juvenile Court's finding that changing the Child's surname to a hyphenated name is in her best interest. Therefore, we affirm the judgment of the Juvenile Court with respect to this issue.

We next address whether the Juvenile Court erred in declining to award attorney's fees to Mother. Mother invokes Tenn. Code Ann. § 36-5-103(c) which provides:

> (c) The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Tenn. Code Ann. § 36-5-103(c)(2010).[3] Pursuant to the statute, we review this issue raised on appeal for abuse of discretion. *Id.* In *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515 (Tenn. 2010), the Supreme Court discussed the abuse of discretion standard at length, stating:

> The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009); *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000). It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. *Overstreet v. Shoney's, Inc.,* 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999). Thus, it does not permit reviewing courts to second-guess the court below, *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999), or to substitute their discretion for the lower court's, *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). The

---

[2](...continued)
Juvenile Court's decision to name the Child "King-Weseman" acceptable.

[3]The parties do not dispute the relevant statute.

abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002).

Discretionary decisions must take the applicable law and the relevant facts into account. *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007). A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009); *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.,* 249 S.W.3d at 358; *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d at 42.

To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions. *Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008) (quoting *BIF, a Div. of Gen. Signal Controls, Inc. v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409, at *3 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed)). When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower court's legal determinations de novo without any presumption of correctness. *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d at 212.

*Beecher*, 312 S.W.3d at 524-25.

Mother argues on appeal that "since she was successful in getting an order for child support and child support arrearage, that she is entitled to an award of fees." It bears noting that Father filed the Petition to Establish Parentage and Co-Parenting Time in

November 2008, well before the birth of the Child. Father affirmatively stepped forward and asked that child support be set.

We do not agree with Mother's contention that she is entitled to an award of attorney's fees. The Juvenile Court neither applied an incorrect legal standard nor reached a decision against logic or reasoning. Given this, we will not substitute our judgment for that of the Juvenile Court. We find that the Juvenile Court did not abuse its discretion in declining to award Mother attorney's fees.

## Conclusion

The judgment of the Juvenile Court is affirmed, and this cause is remanded to the Juvenile Court for collection of the costs below. The costs on appeal are assessed against the Appellant, Amanda King, and her surety, if any.

_____

D. MICHAEL SWINEY, JUDGE