*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A22-1608**

In re the Marriage of:

Any K. Arensberg, petitioner,
Appellant,

vs.

Nicholas Shamus Arensberg,
Respondent.

**Filed January 8, 2024
Affirmed in part, reversed in part, and remanded
Bratvold, Judge**

Hennepin County District Court
File No. 27-FA-21-4526

John T. Burns, Jr., Burns Law Office, Burnsville, Minnesota (for appellant)

Nicholas Shamus Arensberg, Burnsville, Minnesota (pro se respondent)

Considered and decided by Bratvold, Presiding Judge; Schmidt, Judge; and Cleary, Judge.[*]

**NONPRECEDENTIAL OPINION**

**BRATVOLD**, Judge

In this appeal from the district court's post-dissolution order awarding custody and establishing child support, appellant argues that the district court erred by awarding joint

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

physical custody and in determining the amount of child support. First, we conclude that the district court did not abuse its discretion in awarding joint physical custody. Second, we conclude that the district court committed several errors in its calculation of child support. Thus, we affirm in part, reverse in part, and remand.

**FACTS**

Appellant Any K. Arensberg (mother) and respondent Nicholas Shamus Arensberg (father) married in 2018. They have one joint child, born in 2015. The parties separated on March 1, 2019, and mother petitioned for dissolution on August 31, 2021. In mother's petition, she requested joint legal custody, sole physical custody, and "appropriate levels of child support pursuant to the guidelines," along with retroactive child support. Father's answer sought joint legal custody and joint physical custody.

The district court held a bench trial on July 28, 2022, on the issues of custody and parenting time, child support, and property division. During trial, mother sought joint legal custody and sole physical custody, subject to father's parenting time. Both parties testified, and no other witnesses were called. The district court issued findings of fact, conclusions of law, and an order for judgment on October 3, 2022, granting the parties joint legal and joint physical custody, setting parenting time,[1] awarding child support, and resolving the property division.

---

[1] The district court established a parenting-time schedule that gave each parent seven days in a fourteen-day period.

Mother appeals.[2]

## DECISION

**I.**   **The district court did not abuse its discretion by awarding joint physical custody.**

Mother argues that the district court abused its discretion when it concluded that joint physical custody was in the child's best interests. She contends that the district court erred by applying a presumption of joint physical custody.

When determining custody and parenting time, a district court must evaluate the best interests of the child, including "all relevant factors." Minn. Stat. § 518.17, subd. 1(a) (2022). Minnesota law explicitly identifies twelve best-interests factors.[3] *Id.* "The court

_____

[2] Father did not file a brief in this appeal, and this court ordered that the appeal would proceed on the merits as provided in Minn. R. Civ. App. P. 142.03.

[3] The twelve best-interests factors are as follows:
> (1) a child's physical, emotional, cultural, spiritual, and other needs, and the effect of the proposed arrangements on the child's needs and development;
> (2) any special medical, mental health, developmental disability, or educational needs that the child may have that may require special parenting arrangements or access to recommended services;
> (3) the reasonable preference of the child, if the court deems the child to be of sufficient ability, age, and maturity to express an independent, reliable preference;
> (4) whether domestic abuse, as defined in section 518B.01, has occurred in the parents' or either parent's household or relationship; the nature and context of the domestic abuse; and the implications of the domestic abuse for parenting and for the child's safety, well-being, and developmental needs;
> (5) any physical, mental, or chemical health issue of a parent that affects the child's safety or developmental needs;

3

must make detailed findings on each of the factors in paragraph (a) based on the evidence presented and explain how each factor led to its conclusions and to the determination of custody and parenting time." *Id.*, subd. 1(b)(1) (2022). Reversal is appropriate where a district court fails to apply relevant statutory criteria that would have weighed in favor of the appellant. *See Weatherly v. Weatherly*, 330 N.W.2d 890, 892-93 (Minn. 1983).

The application of these factors is governed by related statutory provisions. Relevant to this appeal, the district court "shall consider that it is in the best interests of the child to promote the child's healthy growth and development through safe, stable, nurturing

---

(6) the history and nature of each parent's participation in providing care for the child;

(7) the willingness and ability of each parent to provide ongoing care for the child; to meet the child's ongoing developmental, emotional, spiritual, and cultural needs; and to maintain consistency and follow through with parenting time;

(8) the effect on the child's well-being and development of changes to home, school, and community;

(9) the effect of the proposed arrangements on the ongoing relationships between the child and each parent, siblings, and other significant persons in the child's life;

(10) the benefit to the child in maximizing parenting time with both parents and the detriment to the child in limiting parenting time with either parent;

(11) except in cases in which domestic abuse as described in clause (4) has occurred, the disposition of each parent to support the child's relationship with the other parent and to encourage and permit frequent and continuing contact between the child and the other parent; and

(12) the willingness and ability of parents to cooperate in the rearing of their child; to maximize sharing information and minimize exposure of the child to parental conflict; and to utilize methods for resolving disputes regarding any major decision concerning the life of the child.

*Id.*

relationships between a child and *both* parents." Minn. Stat. § 518.17, subd. 1(b)(2) (2022) (emphasis added). And,

> [t]he court shall consider both parents as having the capacity to develop and sustain nurturing relationships with their children unless there are substantial reasons to believe otherwise. In assessing whether parents are capable of sustaining nurturing relationships with their children, the court shall recognize that there are many ways that parents can respond to a child's needs with sensitivity and provide the child love and guidance, and these may differ between parents and among cultures.

*Id.*, subd. 1(b)(3) (2022). Importantly, "[t]here is no presumption for or against joint physical custody." *Id.*, subd. 1(b)(7) (2022).

A district court has broad discretion to provide for the custody of children. *Hansen v. Todnem*, 908 N.W.2d 592, 596 (Minn. 2018). The "law leaves scant if any room for an appellate court to question the [district] court's balancing of best-interests considerations." *Vangsness v. Vangsness*, 607 N.W.2d 468, 477 (Minn. App. 2000). "A district court abuses its discretion by making findings of fact that are unsupported by the evidence, misapplying the law, or delivering a decision that is against logic and the facts on record." *Woolsey v. Woolsey*, 975 N.W.2d 502, 506 (Minn. 2022). Appellate courts will defer to the district court's findings of fact unless they are clearly erroneous and defer to the district court's credibility determinations. *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988).

Here, the district court analyzed the best interests of the child under Minn. Stat. § 518.17, subd. 1 (2022), and found that eight factors favored joint physical custody (i.e., factors 1, 6, 7, 8, 9, 10, 11, and 12) and that four factors were neutral (i.e., factors 2, 3, 4,

and 5). After balancing these factors, the district court concluded that the child's best interests supported an award of joint physical custody.

Before turning to mother's arguments, we note that mother does not challenge the district court's analysis of the four neutral factors. Nor does mother challenge the district court's determination that factors 9, 11, and 12 favor joint physical custody. We briefly review the district court's analysis of factors 9, 11, and 12. The district court found that factor 9, "the effect of the proposed arrangements on the ongoing relationships between the child and each parent," favored joint physical custody because both mother and father have extended family with whom it would be in the child's best interests to maintain relationships. Minn. Stat. § 518.17, subd. 1(a)(9). The district court found that factor 11, "the disposition of each parent to support the child's relationship with the other parent," favored joint physical custody. *Id.*, subd. 1(a)(11). In part, the district court stated that it had "significant concerns about mother's willingness to support the child's relationship with father" and noted that mother "appears to have disdain towards father." The district court found that factor 12, "the willingness and ability of parents to cooperate in the rearing of their child," favored joint physical custody. *Id.*, subd. 1(a)(12). The district court stated its "concerns" about mother's "ability to co-parent with father," even though it believed that completing a bridging conflict course would "significantly help the parties co-parent."

With these three best-interests factors in mind, we consider mother's arguments that the district court erred in evaluating five other best-interests factors.

*Factor 1: Child's Physical, Emotional, Cultural, Spiritual, and Other Needs*

Mother argues that the district court effectively imposed a "presumption in favor of joint physical custody" by "requiring a showing that joint physical custody will not harm the child" in its discussion of factor 1.

In considering factor 1, the district court found that "[t]he parties do not have significantly different abilities to meet the needs of the child" and that "both parties testified that they would be able to get the child to and from school." In this section of its analysis, the district court found that "the child will be able to explore his cultural and spiritual needs at both parents' houses" and would "*not be harmed* by an equal parenting time schedule" regarding the child's cultural and spiritual needs. (Emphasis added.) The district court concluded that "[b]oth parents are able to support the child's physical, emotional, cultural, spiritual and other needs," which favored joint physical custody.

Mother's challenge focuses on the district court's reference to the child not being harmed by an equal parenting-time schedule. We are not persuaded that the district court imposed a presumption in favor of joint physical custody when we review all of the district court's analysis of factor 1. The district court evaluated both parties' testimony about the child's needs and each parent's ability to meet the child's needs and concluded that both parents were capable. The district court found that Lao culture and the child's education in a Chinese immersion school were important and that there was no evidence that father did not support these needs. And both parents testified that they would support the child's needs. Thus, we conclude that the district court did not abuse its discretion in finding that factor 1 favored joint physical custody.

*Factor 6: History and Nature of Each Parent's Participation in Providing Care for the Child*

Mother argues that the district court erred in its analysis of factor 6 because it "effectively imposed a presumption in favor of joint physical custody by changing this factor to mean that any 'significant care' is sufficient to favor joint physical custody." She also argues the district court erred in weighing this factor in favor of joint physical custody based on mother's role in bringing the child to medical appointments and mother's involvement in the child's activities. Mother also argues that the district court speculated by implying that she withheld father's parenting time without justification.

In analyzing factor 6, the district court found that mother limited father's time with the child because she "held a grudge against father for some perceived slight." The district court described mother's limitation of parenting time as a "unilateral decision" that was not in the child's best interests. The district court first found that father was the primary caregiver initially after separation and that mother has been the primary caregiver since August 2020. The district court also found that after August 2020, mother limited father's access to the child. The district court explained that the parties' testimony reflected "different narratives" on parent participation and credited father's testimony that he was the primary caregiver when the parties first separated.

We are not persuaded that the district court imposed a presumption of joint physical custody in its analysis of factor 6. First, we note that mother's brief to this court appears to concede that she limited father's parenting time and argues about her reasons for doing so. Second, the district court found that both parents provided care for the child and that

father's testimony was more credible about his role as primary caregiver after the initial separation. We defer to a district court's credibility determination. *Sefkow*, 427 N.W.2d at 210. Third, the record supports the district court's finding that both parents have participated in the care of the child, and so the finding is not clearly erroneous. Although the district court's order does not specifically mention some of the evidence summarized in mother's brief, it need not do so. Thus, we conclude that the district court did not abuse its discretion in finding that factor 6 favored joint physical custody.

*Factor 7: Willingness and Ability of Each Parent to Provide Ongoing Care for the Child*

Mother argues that the district court "did not find that both [parents] were willing and able to maintain consistency and follow through with parenting time." She contends that the record shows father "has had difficulty with consistency and follow through with parenting time." She also urges that joint physical custody is "undermined" by the parties' demonstrated "lack of ability to communicate and coordinate."

In its discussion of factor 7, the district court found that father "will likely be an active and committed parent and will support the child in all areas of his life." The district court summarized father's testimony that he would help with homework, do projects, and support the child's activities. Although the district court did not address every aspect of factor 7 in the order, we conclude that the district court did not abuse its discretion in finding that factor 7 favored joint physical custody.

*Factor 8: The Effect on the Child's Well-Being and Development of Changes to Home, School, and Community*

Mother argues that the district court adopted "an interpretation of the best interest statute that effectively creates a presumption in favor of joint physical custody" when it evaluated factor 8 and found there would be "minimal changes" for the child under either parent's custody proposal. Mother appears to imply that a finding of minimal change should make this factor neutral and that the district court erred by concluding that it favored joint physical custody.

In analyzing factor 8, the district court found that father has had parenting time every other weekend since August 2022, the child "is familiar with both parents' homes," and the child will "stay enrolled in his current school." The district court concluded that there would be "minimal changes" for the child under either joint or sole physical custody.

We agree with mother that finding "minimal changes" should not weigh in favor of joint physical custody. But mother must prove error and prejudice to obtain relief on appeal. *See* Minn. R. Civ. P. 61 (requiring courts to ignore harmless error); *Grein v. Grein*, 364 N.W.2d 383, 387 (Minn. 1985) (concluding that remand was unnecessary where the district court would ultimately reach the same result). Even though the district court erred by finding that factor 8 favored joint physical custody, we conclude that mother was not prejudiced by this error. As discussed above, seven of the twelve best-interests factors favor an award of joint physical custody and no factors favor sole physical custody.

*Factor 10: Benefit to the Child in Maximizing Parenting Time with Both Parents*

Mother argues that "there is no basis for the court's statement that 'the child consistently saw his father up until July 23, 2020.'" She also argues that "[c]onsistent adherence to parenting time in the sole custody arrangement will better further the relationship between father and son without the drastic detriment of removing him from his regular schedule and support."

In considering factor 10, the district court again discussed the "conflicting testimony as to how much parenting time father had up until July 2020." The district court found credible father's testimony that he had the child for three months after the parties' separation and on a week-on, week-off schedule for at least a year. The district court also found mother's testimony not credible because she provided inconsistent explanations about who cared for the child more recently. We defer to the district court's findings of fact unless they are clearly erroneous and defer to the district court's credibility determinations. *Sefkow*, 427 N.W.2d at 210. The district court also discussed that mother limited father's parenting time and that joint physical custody would benefit the child's relationship with father and allow them to "repair any damage to their relationship."

In her brief to this court, mother acknowledges that the district court's determination that father credibly testified about his role in caring for the child until July 2020 was "entitled to deference on appeal." Still, mother argues that father did not prove any "interaction" with the child during the time that father worked "out of town." And she argues that the district court had no evidence of "damage" to father's relationship with the child. We are not persuaded. As discussed, not only does the record support—and mother

concede—that she limited father's parenting time, but also, father credibly testified that he participated in caring for the child before mother limited his parenting time. The district court also did not specifically find "damage" to the father-child relationship; it considered whether joint physical custody would allow repair of "*any* damage." (Emphasis added.) We conclude that the record supports the district court's analysis of this factor. Therefore, the district court did not abuse its discretion in finding that factor 10 favored joint physical custody.

In sum, because at least seven of twelve best-interests factors favor joint physical custody, at least four factors are neutral, no factors favor awarding mother sole physical custody, and the record supports the district court's findings of fact, we conclude that the district court did not abuse its discretion in awarding joint physical custody.

## II.    The district court erred in its calculation of child support.

Mother argues the district court abused its discretion in setting child support in four ways: (1) erroneously calculating father's gross income, (2) improperly requiring mother to pay father for the child's healthcare insurance, (3) erroneously determining father's share of childcare expenses, and (4) erroneously declining to award retroactive child support.

The district court found that mother's gross monthly income is $3,810 and that father's gross monthly income is $4,503. It found that each party testified that their healthcare insurance would cover the child, but father had been providing healthcare insurance for the child, and mother asked for this to continue. The district court found that father's healthcare insurance costs $200 per month for the child. The district court

concluded that father must pay $52 per month to mother in basic child support, father must provide healthcare insurance for the child, mother must pay $92 per month to father for healthcare insurance for the child, and mother incurs childcare costs of $98 per month. The district court's analysis resulted in a net payment of $40 per month from mother to father. The district court also denied mother's request for retroactive child support.

We consider each of mother's four arguments in turn.

*Father's Gross Income*

Mother argues that the district court abused its discretion in calculating father's gross income. Father did not file a financial affidavit.[4] At trial, father testified that he is employed, makes $26 an hour, and works at least 40 hours per week. The district court found that father's monthly gross income is $4,503, father's hourly pay rate is $26, and he works 40 hours per week.

Mother points out that father testified he works 40-45 hours per week, but that the district court calculated father's income based on a 40-hour week. She argues the district court did not make the findings necessary to omit father's additional five hours of income per week. Minnesota law provides that gross income does not include compensation

---

[4] "In any case where the parties have joint children for which a child support order must be determined, the parties shall serve and file with their initial pleadings or motion documents, a financial affidavit, disclosing all sources of gross income . . . ." Minn. Stat. § 518A.28(a) (2022). But if a parent does not serve and file a financial affidavit, "the court shall set income for that parent based on credible evidence before the court or in accordance with section 518A.32." *Id.* (c) (2022). The district court may consider "credible evidence" such as "documentation of current or recent income, testimony of the other parent concerning recent earnings and income levels, and the parent's wage reports filed with the Minnesota Department of Employment and Economic Development." *Id.*

13

received by a party for employment in excess of a 40-hour work week, as long as certain requirements are met, and the court makes certain findings. Minn. Stat. § 518A.29(b) (2022).[5] We agree with mother that the district court did not make the specific findings required by section 518A.29(b).

Still, we are not persuaded that the district court erred by not finding that father worked 45 hours a week. Rather, the district court found that father worked 40 hours per week, and the record supports that finding. Father testified that he worked "40, *sometimes* 45, at most, usually" hours per week. (Emphasis added.) The district court's finding that father worked 40 hours per week was not clearly erroneous. Thus, the district court did not omit or exclude five hours per week from father's gross income, nor did it err by failing to make findings under Minn. Stat. § 518A.29(b).

---

[5] Section 518A.29(b) provides the following requirements and findings:

(1) child support is ordered in an amount at least equal to the guideline amount based on gross income not excluded under this clause; and
(2) the party demonstrates, and the court finds, that:
(i) the excess employment began after the filing of the petition for dissolution or legal separation or a petition related to custody, parenting time, or support;
(ii) the excess employment reflects an increase in the work schedule or hours worked over that of the two years immediately preceding the filing of the petition;
(iii) the excess employment is voluntary and not a condition of employment;
(iv) the excess employment is in the nature of additional, part-time or overtime employment compensable by the hour or fraction of an hour; and
(v) the party's compensation structure has not been changed for the purpose of affecting a support or maintenance obligation.

*Id.*

Mother also argues the district court erred by not including as gross income bonuses that father receives. "[G]ross income includes any form of periodic payment . . . ." *Id.* (a) (2022). "[B]onuses are forms of periodic payment and therefore income." *Novak v. Novak*, 406 N.W.2d 64, 68 (Minn. App. 1987), *rev. denied* (Minn. July 22, 1987). "[T]he public policy giving children the right to enjoy the benefit of their parents' increased income is paramount." *Desrosier v. Desrosier*, 551 N.W.2d 507, 509 (Minn. App. 1996).

In *Desrosier*, we determined the district court erred by not including a parent's annual bonus when calculating child support. *Id.* We reasoned that the parent's annual bonus payments were a dependable form of periodic payment that the children were entitled to share, even though the bonuses may not be guaranteed or certain as to amount. *Id*. We also considered that the record showed the bonuses were a "high percentage" of the parent's income and therefore reversed and remanded for a recalculation of child support. *Id*. We note that *Desrosier* was interpreting a previous child-support statute, Minn. Stat. § 518.54 (1994). *Id.* Still, both the previous and the current child-support statutes define income as "any form of periodic payment to an individual." *Id*. (quoting former section 518.54); Minn. Stat. § 518A.29(a). *Desrosier* is therefore still applicable today.

Here, mother argues that father receives regular bonuses of up to $1,000 per month. Father testified that his employer had started a bonus structure, which he described as a "monthly bonus." In response to questioning from the district court, father clarified that the bonus is based on his performance and is not automatic. Father stated that he receives up to $1,000 in monthly bonuses.

15

We observe that father's monthly bonus is about 22% of father's monthly income and, if included in the child-support calculation, would increase father's share of parental income from 54% to 59%. In *Desrosier*, as in this case, the bonuses were not guaranteed and were uncertain as to amount. Thus, we conclude the district court erred by not including father's bonuses in its calculation of father's gross income.

*Cost of the Child's Healthcare Insurance*

Mother argues that the district court abused its discretion by requiring her to contribute to the cost of health insurance for the child. In support of her argument, mother cites Minn. Stat. § 518A.41, subd. 5(d) (2022), which provides that a district court must not order a parent to contribute to healthcare-insurance costs under certain circumstances:

> If the party ordered to carry health care coverage for the joint child *already carries dependent health care coverage for other dependents and would incur no additional premium costs to add the joint child to the existing coverage*, the court must not order the other party to contribute to the premium costs for coverage of the joint child.

Minn. Stat. § 518A.41, subd. 5(d) (emphasis added).

Mother contends that the record shows the required circumstances. Mother points to father's testimony about his out-of-pocket costs for healthcare insurance.

> THE COURT: Let me ask you: Do you know how much extra you pay each month for [the joint child] to be covered under your plan?
> FATHER: I cover my [non-joint] daughter, as well. So, it's a family plan, like, I couldn't really say. I know an individual plan is, like, $400, or something, and I pay, like, $800; so, maybe $200 extra, if I would split the extra $400 in half because two kids.

16

THE COURT: So, for the family plan, it doesn't matter how many kids you have. If you've got two on it, it's $800, if you have four on it, it would be $800. Am I getting that right?

FATHER: I—I believe so. I don't know how far—how high it goes.

THE COURT: Okay.

FATHER: But I know two is the same as one.

THE COURT: So, you'd say about $200 of that, you would attribute to money that you're paying for [the joint child] every month, in terms of the medical coverage?

FATHER: Yeah.

We agree with mother's view of the record. Father's statement, "I know two is the same as one," indicates that father does not pay an extra premium cost to include the child on his healthcare plan. The district court found that it "costs approximately $200 per month [for father] to have the [c]hild on his plan." While it is true that $200 is half of the $400 father pays to include dependents on his healthcare plan, the district court's reasoning misapplied the statute. *Woolsey*, 975 N.W.2d at 506 (stating that a district court abuses its discretion if its findings improperly apply the law). Here, the record establishes that father pays the same premium whether he includes one child or two on his healthcare plan. Thus, under Minn. Stat. § 518A.41, subd. 5(d), the district court abused its discretion in ordering mother to contribute to the child's healthcare premium.

*Childcare Expenses*

Mother argues that the district court clearly erred in finding childcare expenses were $98 per month because she testified that they were $300 per month.

The district court findings on this issue cited an exhibit showing mother's historic childcare costs, and the district court noted that it placed "greater weight on the documentary evidence" than on mother's testimony. The receipts mother submitted show

childcare costs of $1,240 over ten months, or $124 per month. The district court did not abuse its discretion in electing to use the exhibits proffered by mother and rejecting mother's testimony. Appellate courts do not reweigh the evidence when reviewing findings of fact. *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221 (Minn. 2021). But the record does not support the district court's finding of $98 in childcare costs per month because the receipts show an average cost of $124 per month. Thus, the district court clearly erred in determining the amount of childcare expenses.

*Retroactive Child Support*

Mother argues that the district court erred by not awarding her retroactive child support of $19,000. The district court reasoned that the parties' testimony conflicted about how much parenting time each party had as well as how much child support father paid mother before the dissolution trial. The district court concluded that it "was not presented with enough evidence to comfortably establish [retroactive] child support during the pendency of this action."

The Minnesota Supreme Court has stated that "a parent's obligation to support [their] children commences with the child's birth." *Jacobs v. Jacobs*, 309 N.W.2d 303, 305 (Minn. 1981); *see also Korf v. Korf*, 553 N.W.2d 706, 710 (Minn. App. 1996) (ordering, in a final decree, retroactive child support dating back to the parties' date of separation). A district court generally "may not order retroactive child support for dates prior to the commencement of an action under chapter 518." *Korf*, 553 N.W.2d at 710. Under the Minnesota Child Support Guidelines Worksheet, several factors determine the amount of

child support, one of which is the percentage of parenting time each party receives. Minn. Stat. §§ 518A.34(b)(6), .36 (2022).

Here, the district court found that there was insufficient evidence to establish retroactive child support. The district court focused on the lack of evidence showing the amount of parenting time each party had received. As we have already discussed, the parties' testimony was very general and conflicted. Mother testified that before the dissolution, she was the sole caregiver, that parenting time was week-on, week-off for a few months, and that she eventually limited father's parenting time. But the district court found mother's testimony inconsistent and not credible. The district court found credible father's testimony that he was the sole caregiver when the parties separated, followed by a week-on, week-off parenting-time schedule. Father testified that after the dissolution, he received inconsistent parenting time: "whenever [mother] feels like it . . . [she is] not allowing me [to see] him every other weekend." Based on our review of the record, the evidence does not establish how much father had paid to mother in child support before the dissolution trial. Thus, we conclude that district court did not abuse its discretion in determining that the evidence was insufficient to establish retroactive child support and therefore declining to award it.

In sum, we agree with the district court's determination that father's basic income is $4,503 monthly. We reverse and remand for the district court to recalculate child support and to include father's bonuses in its calculation of father's gross income, to remove the requirement for mother to reimburse father for the child's healthcare insurance, and for a

19

revised calculation of childcare expenses based on the record evidence. We affirm the district court's decision to deny retroactive child support.

**Affirmed in part, reversed in part, and remanded.**